FILED

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA VIRGINIA**

**DANIEL BROWN, AS A STOCKHOLDER**
**DERIVATIVELY ON BEHALF OF**
**DANMARC, INC.**
        **d/b/a CAPITAL CAT CLINIC**

**and**

**DANIEL BROWN, INDIVIDUALLY**
**Plaintiffs**

**v.**

Case No: _1:12CV 890 - LO/TCB_
**JURY TRIAL DEMANDED**

**MGBDVM, LLC**

**and**

**MARCUS BROWN**
**Defendants**

<u>**COMPLAINT**</u>

**I.    PARTIES**

1.    DanMarc, Inc. ("DanMarc") is a Virginia Corporation.   DanMarc conducts business using the trade name and common law servicemark "Capital Cat Clinic".

2.    Plaintiff Daniel Brown owns fifty percent (50%) of the outstanding shares of the stock of DanMarc, is one of two directors of DanMarc, and is the Secretary of DanMarc.

3.    Daniel Brown is a resident of the District of Columbia.

4.    Defendant Marcus Brown owns the other fifty percent (50%) of the outstanding shares of stock of DanMarc, is the second of two directors of DanMarc, and is the President of DanMarc.

1

5.     Marcus Brown is, on information and belief, a resident of the Commonwealth of Virginia.

6.     Daniel Brown and Marcus Brown are the only stockholders and directors of DanMarc.

7.     Defendant, MGBDVM, LLC ("MGBDVM"), is a Virginia Limited Liability Company.

8.     On information and belief, Marcus Brown is the sole owner of MGBDVM.

9.     The records of the Virginia State Corporation Commission identify Leonard Buscemi, Esquire, to be the Registered Agent of MGBDVM.

10.    Leonard Buscemi represents Marcus Brown as attorney of record in litigation in Virginia state court styled *Brown v. DanMarc, Inc. and Brown,* Case No: 10-568 (Arlington County Circuit Court) ("the State Lawsuit").

## II.    JURISDICTION

11.    28 USC § 1331 provides that the U.S. District Courts have original jurisdiction over all civil actions arising under the laws of the United States.  Title 15 Section 1121 of the United States Code confers jurisdiction on the United States District Court, because this case involves application of a federal statute, to wit:  Title 15 U.S. Code, Chapter 22, commonly referred to as the Lanham Act.

12.    Supplemental jurisdiction as to the State law claims applies pursuant to 28 USC § 1367, as the claims flow directly from and are related to the violation of the federal statutes.

## III.   VENUE

13.    Venue is appropriate in the Eastern District of Virginia pursuant to 28 USC § 1391 because DanMarc is located in Arlington, Virginia and the majority of its business is from

Virginia residents, and Defendant Marcus Brown, on information and belief, is a resident of Arlington, Virginia. Further the actions complained of occurred in Arlington, Virginia.

## IV.   SUMMARY

14.   This action comprises five counts from common facts. The first Count asks the Court to cancel a Notice of Allowance issued by the U.S. Patent and Trademark Office ("USPTO") for Defendant Marcus Brown's fraudulent application to register, in the name of MGBDVM, a servicemark actually owned by DanMarc. The second count seeks damages for Defendants' filing and prosecution of the application and the USPTO's issuance of the Notice of Allowance to MGBDVM. The third and fourth Counts are for Defendant's fraud and constructive fraud, respectively, in preparing and submitting the application to register that servicemark, and Defendant Marcus Brown's filing of a false fictitious name certificate with the Virginia State Corporation Commission ("SCC") claiming ownership of DanMarc's trade name "Capital Cat Clinic". The fifth Count is a derivative proceeding on behalf of DanMarc pursuant to Section 13.1-672.1 *et seq.* of the Code of Virginia for Defendant Marcus Brown's attempted conversion of DanMarc's servicemark and the trade name "Capital Cat Clinic".

## V.   FACTS

15.   DanMarc is a cat veterinary practice which has more than $1.2 Million in revenue each year.

16.   DanMarc conducts all of its business using (a) the trade name "Capital Cat Clinic" (the "Trade Name") and (b) a common law servicemark containing the words "Capital Cat Clinic" and a design that incorporates a drawing of a cat (the "Servicemark"). A copy of DanMarc's Servicemark is attached hereto and incorporated by reference as Exhibit 1.

17.     DanMarc has continuously owned and exclusively used both the Trade Name and the Servicemark since 1998. DanMarc uses the Trade Name and Servicemark on its website and in its advertising.  DanMarc derives roughly 75-85% of its client base through such use of the Trade Name and Servicemark.

18.     For several years, Defendant Marcus Brown and Plaintiff Daniel Brown, who are not related, have been deadlocked regarding most management decisions confronting DanMarc. That dispute caused Defendant Marcus Brown and Plaintiff Daniel Brown to litigate whether DanMarc should be dissolved, which litigation is under way in the State Lawsuit.  The State Lawsuit is pending in the Arlington County Circuit Court.

19.     Proceedings in the State Lawsuit have been contentious.  On March 25, 2011, the Arlington County Circuit Court entered an Order in the State Lawsuit that, among other things, (a) found that Marcus Brown and Daniel Brown, as equal shareholders and the only directors and corporate officers of DanMarc, were "deadlocked in the management of the corporate affairs and unable to break the deadlock"; and (b) ordered Daniel Brown and Marcus Brown to preserve the status quo by continuing to conduct the operations of DanMarc in ordinary commerce (the "March 25 Order") .  A copy of the March 25 Order is attached hereto and incorporated by reference as Exhibit 2.

20.     Apparently frustrated by the deadlock within DanMarc and the pace of the State Lawsuit, Defendant Marcus Brown, or his lawyer, Leonard Buscemi, formed MGBDVM on April 21, 2011.  A copy of a page from the SCC website reflecting MGBDVM's date of organization and Leonard Buscemi's status as MGBDVM's registered agent is attached hereto and incorporated by reference as Exhibit 3.

21.     On or about July 11, 2011, in violation of the March 25 Order, Defendant Marcus Brown, or his lawyer Leonard Buscemi, filed a fictitious name certificate with the SCC claiming that MGBDVM owned and was doing business using the Trade Name (the "Fictitious Name Certificate").   A copy of a page from the SCC's website reflecting the filing of that Fictitious Name Certificate is attached hereto and incorporated by reference as Exhibit 4.

22.     Section 59.1-69(A) of the Code of Virginia provides, in part, that one who files a fictitious name certificate represents that it owns the trade name that is the subject of the certificate.

23.     Section 13.1-1006 of the Code of Virginia provides, in part, that "It shall be unlawful for any person to sign a document he knows to be false in any material respect with intent that the document be delivered to the SCC for filing."

24.     As President, Director and 50% owner of DanMarc, Defendant Marcus Brown had actual knowledge that DanMarc owned and exclusively used the Trade Name "Capital Cat Clinic."

25.     Defendant Marcus Brown, or his lawyer Leonard Buscemi, had actual knowledge that the Fictitious Name Certificate was false at the time it was submitted to the SCC.

26.     On or about June 30, 2011, in violation of the March 25 Order, Defendant Marcus Brown submitted an application to register the "Capital Cat Clinic" name and cat design as a servicemark with the USPTO.  A copy of Defendant Marcus Brown's application is attached hereto and incorporated by reference as Exhibit 5 (the "Application").  The USPTO assigned Serial Number 85360661 to the Application.

27.    The design and words of the mark that is the subject of the Application are identical with the design and words of the Servicemark owned by DanMarc.  Please compare Exhibits 1 and 5.

28.    In the Application, Defendant Marcus Brown represented to the USPTO that MGBDVM owns the "Capital Cat Clinic" name and design.

29.    During June 2011 through February 2012, Defendant Marcus Brown prosecuted the Application with the USPTO.  A copy of that prosecution history from the USPTO's website is attached hereto and incorporated by reference as Exhibit 6.

30.    In the Application, Defendant Marcus Brown made the following declaration:

**Declaration**

> The undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements, and the like, may jeopardize the validity of the application or any resulting registration, declares that he/she is properly authorized to execute this application on behalf of the applicant to be the owner of the trademark/service mark sought to be registered, or, if the application is being filed under 15 U.S.C. Section 1051(b), he/she believes applicant to be entitled to use such mark in commerce; to the best of his/her knowledge and belief no other person, firm, corporation or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive; and that all statements made of his/her own knowledge are true; and that all statements made on information and belief are believed to be true.
>
> Signature: /Marcus G. Brown/ Date Signed: 06/29/2011
> Signatory's Name:  Marcus G. Brown
> Signatory's Position: Owner

6

31.     As President, Director, and 50% owner of DanMarc, Defendant Marcus Brown had actual knowledge that DanMarc owned and was exclusively using the Servicemark.

32.     Defendant Marcus Brown knew that the declaration was false and misleading at the time he submitted the Application on June 30, 2011, and during the remainder of 2011 as he prosecuted the Application.

33.     On information and belief, Defendant Marcus Brown's intentions in filing both the Application and the Fictitious Name Certificate were (a) to bypass the deadlock within DanMarc; (b) to bypass the State Lawsuit; and (c) to convert DanMarc's Trade Name and Servicemark for his own use through MGBDVM.

34.     Defendant Marcus Brown submitted the Application as an "Intent to Use" application under Section 1(b) of the Lanham Act (15 USC § 1051 (b)). In other words, Marcus Brown represented to the USPTO that although MGBDVM owns the mark that is the subject of the Application, MGBDVM had not started to use that mark in commerce.

35.     On February 14, 2012 the USPTO issued its "Notice of Allowance" for the Application, a copy of which is attached hereto and incorporated by reference as Exhibit 7. The Notice of Allowance shows that the mark that is the subject of the Application meets all legal requirements for registration.

36.     To register the mark that is the subject of the Application, Defendant Marcus Brown need only file a "Statement of Use" with the USPTO claiming that Defendant MGBDVM is using the mark in commerce, together with a specimen of the mark as used.

37.     The Lanham Act affords MGBDVM up to 36 months after February 14, 2012 to file its "Statement of Use" if MGBDVM files appropriate documents with the USPTO.

38.     On or about June 27, 2011, Defendant Marcus Brown changed the locks at DanMarc's premises and took other actions in an attempt to "lockout" Plaintiff Daniel Brown.

39.     On July 28, 2011, in response to Defendant Marcus Brown's attempt to "lockout" Daniel Brown, the Circuit Court of Arlington County entered an Order in the State Lawsuit compelling Marcus Brown to restore the status quo existing before the lockout. A copy of the transcript of the hearing is attached hereto and incorporated by reference as Exhibit 8.

40.     From April, 2011 until the present, Defendant Marcus Brown and his lawyer, Leonard Buscemi, concealed (a) the existence of MGBDVM; (b) their filing of the Fictitious Name Certificate; (c) their filing and prosecution of the Application; and (d) the USPTO's issuance of the Notice of Allowance. At no time did Defendant Marcus Brown or his lawyer, Leonard Buscemi, reveal any of the foregoing facts to Plaintiff Daniel Brown or to the Arlington County Circuit Court.

41.     In recent days Plaintiff Daniel Brown discovered all of Defendant Marcus Brown's actions outlined above. In an email dated August 13, 2012, counsel for Daniel Brown demanded that Defendant Marcus Brown withdraw the Application forthwith. A copy of that email is attached hereto and incorporated by reference as Exhibit 9. Neither Defendant Marcus Brown nor his lawyer, Leonard Buscemi, has (a) withdrawn the Application, nor (b) answered the email.

42.     On August 24, 2012, counsel for Daniel Brown sent a letter to DanMarc with a copy to Leonard Buscemi, Counsel to Defendant Marcus Brown, demanding (a) that Marcus Brown, as President of DanMarc, convene the Board of Directors of DanMarc; and (b) that the Board of Directors direct DanMarc's counsel to file suit against Marcus Brown (i) for his attempt to convert DanMarc's "Capital Cat Clinic" Trade Name, by filing the Fictitious Name

Certificate; and (ii) for his attempt to convert DanMarc's Servicemark, by filing the Application. A copy of the demand letter is attached hereto and incorporated by reference as Exhibit 10.

43.     To date, Defendant Marcus Brown has neither (a) responded to the demand letter, nor (b) convened a meeting of DanMarc's Board of Directors.

## VI.     COUNT I:  VIOLATION OF THE LANHAM ACT

44.     The allegations set forth in Paragraphs 1-43 above are incorporated herein by reference as if each were set forth in its entirety.

45.     An applicant for the registration of a service mark must verify, under oath, that the Applicant is the legal owner of the mark in question, that the facts stated in the application are accurate and that "to the best of the verifier's knowledge and belief, no other person has the right to use such mark either in the identical form thereof or in such near resemblance thereto as to be likely, when used or in connection with such other person, to cause confusion, or to cause mistake or to deceive…" 15 USC §§ 1051(a)(3)(A), (a)(3)(B) and (a)(3)(D).

46.     As shown by Exhibit 5, Defendant Marcus Brown represented to the USPTO (a) that MGBDVM, not DanMarc, owned the mark that was the subject of the Application, and (b) that no other party had the right to use the Servicemark in commerce.

47.     Defendant Marcus Brown's representations to the USPTO in the application were statements of material fact, not opinion.

48.     At the time Marcus Brown submitted and prosecuted the Application on behalf of MGBDVM, he had actual knowledge that DanMarc, not MGBDVM, owned and was using the Servicemark and the Trade Name.

49.   Defendant Marcus Brown's fraudulent statements in the Application were his willful attempt to deceive the USPTO to induce it to register the Servicemark in MGBDVM's name and thus fraudulent.

50.   Defendant Marcus Brown submitted the fraudulent Application for an improper purpose, namely to steal DanMarc's Servicemark and Trade Name for MGBDVM, an entity Marcus Brown or his lawyer, Leonard Buscemi, established for the purpose of competing with DanMarc.

51.   The USPTO was deceived by Defendant Marcus Brown's fraudulent application and issued the Notice of Allowance.

52.   This Court should cancel the USPTO's Notice of Allowance, based on the fraudulent Application, as provided by 15 USC Section 1119 and award Plaintiff his legal fees and costs.

## VII.   COUNT II: VIOLATION OF LANHAM ACT

53.   The allegations set forth in Paragraphs 1-52 above are incorporated herein by reference as if each were set forth in its entirety.

54.   The Lanham Act prohibits filing false or fraudulent declarations or representations to the USPTO which are designed to procure registration of a servicemark. 15 USC §1120.

55.   As shown by Exhibit 5, Defendant Marcus Brown represented to the USPTO (a) that MGBDVM, not DanMarc, owned the mark that was the subject of the Application, and (b) that no other party had the right to use the Servicemark in commerce.

56.   Defendant Marcus Brown's misrepresentations to the USPTO in the Application were statements of material fact, not opinion.

10

57.     At the time Marcus Brown submitted and presented the Application on behalf of MGBDVM, he had actual knowledge that DanMarc, not MGBDVM, owned and was using the Servicemark and the Trade Name.

58.     Defendant Marcus Brown's fraudulent statements in the Application were his willful attempt to deceive the USPTO to induce it to register the Servicemark in MGBDVM's name.

59.     Defendant Marcus Brown submitted the Application for an improper purpose, namely to steal DanMarc's Servicemark and Trade Name for MGBDVM, an entity Marcus Brown or his lawyer, Leonard Buscemi, established for the purpose of competing with DanMarc.

60.     The USPTO was deceived by Defendant Marcus Brown's Application and issued the Notice of Allowance.

61.     MGBDVM concealed its filing of this application from DanMarc, in a further act of fraud, and it was only after Leonard Buscemi asserted that DanMarc has not registered the Servicemark with the USPTO in the State Lawsuit that DanMarc discovered the fraudulent Application.

62.     Despite Plaintiff's demand that Defendants withdraw the Application, Defendants have not withdrawn the Application, nor has MGBDVM notified the USPTO of the inaccuracy and fraud inherent in the Application.

63.     Wherefore, Plaintiff seeks an injunction and writ of mandamus directing MGBDVM, Marcus Brown, and his agents (a) to withdraw the Application to register the Servicemark, (b) to not file a Statement of Use or an Extension Request with the USPTO, (c) to not submit a fresh application to register the Servicemark with the USPTO, and to pay damages which are proximately caused by the fraudulent conduct of Defendant Marcus Brown, and

Plaintiff's costs and legal fee efforts to expose and deter that fraud, in accordance with 15 United States Code Section 1120.

## VIII.  COUNT III:  FRAUD

64.     The allegations set forth in Paragraphs 1-63 above are incorporated herein by reference as if each were set forth in its entirety.

65.     As shown by Exhibit 5, Defendant Marcus Brown represented to the USPTO (a) that MGBDVM, not DanMarc, owned the mark that was the subject of the Application, and (b) that no other party had the right to use the Servicemark in commerce.

66.     Defendant Marcus Brown's misrepresentations to the USPTO in the Application were statements of material fact, not opinion.

67.     At the time Marcus Brown submitted and presented the Application on behalf of MGBDVM, he had actual knowledge that DanMarc, not MGBDVM, owned and was using the Servicemark and the Trade Name.

68.     Defendant Marcus Brown's fraudulent statements in the Application were  his willful attempt to deceive the USPTO to induce it to register the Servicemark in MGBDVM's name.

69.     Defendant Marcus Brown submitted the Application for an improper purpose, namely to steal DanMarc's Servicemark and Trade Name for MGBDVM, an entity Marcus Brown or his lawyer, Leonard Buscemi, established for the purpose of competing with DanMarc.

70.     The USPTO was deceived by Defendant Marcus Brown's Application and issued the Notice of Allowance.

71.     MGBDVM concealed its filing of this application from DanMarc, in a further act of fraud, and it was only after Leonard Buscemi asserted that DanMarc has not registered the

12

Servicemark with the USPTO in the State Lawsuit that DanMarc discovered the fraudulent Application.

72.     Despite Plaintiff's demand that Defendants withdraw the Application, Defendants have not withdrawn the Application, nor has MGBDVM notified the USPTO of the inaccuracy and fraud inherent in the Application.

73.     Defendants' knowingly represented to the SCC that MGBDVM, not DanMarc, owned the Trade Name. That false statement was fraudulent and unlawful.

74.     Defendants concealed (a) the existence of MGBDVM, (b) their filing of the Fictitious Name Certificate, (c) their filing and prosecution of the Application, and (d) the USPTO's issuance of the Notice of Allowance. The Defendant's concealment consisted of facts, as opposed to opinions, which Defendants knew were false and misleading at the time they were made.

75.     Defendants purpose was to conceal their actions from DanMarc, Daniel Brown, and from the Arlington County Circuit Court.

76.     As a result of the concealment and fraud, Plaintiff has been damaged in that the Defendants registered to another entity a valuable asset of DanMarc, while at the same, Marcus Brown was arguing in State court that the Servicemark had no value because it was not registered.

77.     Further, Plaintiff anticipates future damages once the Defendants employ use of the service mark to divert business to DanMarc's MGBDVM.

78.     Wherefore, Plaintiff seeks an injunction against Defendant making any state filing that seeks to use, employ or transfer the Servicemark or trade name of Capital Cat Clinic or its logo to any entity without notice to DanMarc. Plaintiff also seeks punitive damages in the

amount of $100,000.00 for Defendant's fraud to deter Defendant from future misconduct and misrepresentation and Plaintiff further seeks attorneys fees and costs associated with prosecuting this claim.

## IX.    COUNT III:  CONSTRUCTIVE FRAUD

79.    The allegations set forth in Paragraphs 1-78 above are incorporated herein by reference as if each were set forth in its entirety.

80.    To the extent Defendants actions were not made with actual knowledge of their falsehood, Defendants acted with a reckless disregard for the truth as well as failed to verify the accuracy of the information they supplied on the registration.

81.    Wherefore, Plaintiff seeks an injunction against Defendant making any state filing that seeks to use, employ or transfer the Servicemark or trade name of Capital Cat Clinic or its logo to any entity without notice to DanMarc.  Plaintiff also seeks punitive damages in the amount of $100,000.00 for Defendant's fraud to deter Defendant from future misconduct and misrepresentation and Plaintiff further seeks attorneys fees and costs associated with prosecuting this claim.

## X.    COUNT IV: DERIVATIVE ACTION

82.    The allegations set forth in Paragraphs 1-81 above are incorporated herein by reference as if each were set forth in its entirety.

83.    Section 13.1-671.1 *et seq.* of the Code of Virginia provides the requirements to commence and maintain a derivative action by a shareholder on behalf of a corporation.

84.    Plaintiff's letter to Defendant Marcus Brown, a copy of which is attached hereto and incorporated by reference at Exhibit 10, is the written demand mandated by Section 13.1-672.1(B)(1).

85.    In response, Defendant Marcus Brown, as President of DanMarc, has failed to call a Board meeting and the Board of DanMarc has not voted to authorize DanMarc to sue Defendant Marcus Brown.

86.    Defendant Marcus Brown's failure to convene the Board constitutes DanMarc's rejection of the demand.  This refusal satisfies the requirement of Section 13.1-672.1(B)(2)(i) of the Code of Virginia.

87.    As noted in Exhibit 2 hereto, the Arlington County Circuit Court has found that the Board of Directors of DanMarc is, and will likely remain, deadlocked.  There is no practical purpose served by forcing Plaintiff Daniel Brown to wait 90 days before proceeding with his derivative action.

88.    DanMarc faces irreparable injury if Plaintiff Daniel Brown must wait 90 days after the date he delivered the demand.  At any time Defendant Marcus Brown could file a Statement of Use with the USPTO on behalf of MGBDVM and register the mark that is the subject of the Application. That action would sever the public's identification of the "Capital Cat Clinic" Servicemark with DanMarc, causing irreparable injury to DanMarc.

89.    Plaintiff Daniel Brown, on behalf of DanMarc, demands that the Court (a) enjoin Marcus Brown to cancel the Fictitious Name Certificate; (b) award DanMarc its damages for Marcus Brown's attempt to convert the Trade Name and Servicemark; and (c) award Plaintiff Daniel Brown his legal fees and costs pursuant to Section 13.1-672.5 of the Code of Virginia.

Respectfully submitted,

Daniel Brown, as a Stockholder derivatively on behalf of DanMarc, Inc., and Daniel Brown, individually
*Plaintiffs by Counsel*

GRAD, LOGAN & KLEWANS, P.C.

Kevin Byrnes, VA Bar #47623
3141 Fairview Park Drive, Suite 350
Falls Church, VA 22042
Firm Telephone:  703-548-8400
Direct Line:  703-535-5393 `
Facsimile:  703-836-6289
Email:  kbyrnes@glklawyers.com
Counsel for Plaintiff